## FOREIGN ASSIGNEE OF BANKRUPT.

---

ABRAHAM and THOMPSON *v.* PLESTORO, JOHNSTON, and others, 3 Wend. 538, 573.

In Ch. 4 Paige, 236.

*Foreign Assignee of Bankrupt.*

ABRAHAM, the defendant below, left England in July, 1828, with 24 cases of paintings, merchandize, &c., and on arriving at New York, the goods were deposited in the public store, under charge of the defendant Thompson, as collector of the port. Shortly after Abraham left England, a commission of bankruptcy was sued out against him, and he was duly declared a bankrupt. On the 8th of August, 1828, Johnston, one of the complainants, was made provisional assignee. On the 24th of September, 1828, he, together with the creditors of Abraham, all of whom were British subjects, resident in England, filed their bill in this cause, before

judgments obtained by the creditors, and obtained an injunc-
tion restraining the collector from delivering the goods to
Abraham, and restraining the latter from receiving or prose-
cuting for the same. Abraham put in his answer, neither
admitting nor denying the proceedings under the commis-
sion, but alleging that he had left England in the lawful
pursuit of his business, and with a *bona fide* intention of re-
turning; and denying that he was insolvent, or had com-
mitted any act of bankruptcy in England. He admitted
the debt of Plestoro, and some others as stated, but denied
others in the bill. On the coming in of the answer, the de-
fendant, Abraham, moved for a dissolution of the injunction.

The Chancellor denied the motion, holding that the as-
signment to the provisional assignee under the English
bankrupt law divested the title of the bankrupt to the prop-
erty he brought to this country; and that the injunction was
properly granted upon the application of the assignee to re-
strain a third person from delivering it to the bankrupt, and
to restrain the latter from receiving or prosecuting for it.
He also held, that the commencement of suits by the Eng-
lish creditors, in the courts of common law of this state,
against the bankrupt, to recover judgments for their respec-
tive debts, would not defeat the effect of the assignment to
the assignee. The Chancellor in his opinion, relies chiefly
on the case of *Holmes* v. *Remsen*, 4 J. C. R. 460. He says
that "in the cases cited to the contrary, the contest was be-
tween the *foreign assignees* and *domestic creditors* claiming
under the *lex loci* where the suits were brought. It was
probably not necessary that the creditors should have joined
in this suit with the assignee, but that is no ground for dis-
solving the injunction." He also held that "in this case, the
property was constructively within the jurisdiction of the
country of the bankrupt, being on the high seas, when the
provisional assignment was made." The motion to dissolve
the injunction was denied *with costs*.

On appeal to the Court of Errors from this decision, that
court held, that an assignee under a foreign commission of
bankruptcy, is not entitled, nor the creditors before judgment,
to an *injunction*, to restrain the bankrupt from receiving from
the custom house here, property which was on the *high seas*

on board a vessel on its way from England to New York, at the time of the suing out of the commission. Sutherland and Marcy, Js., were for affirming the order of the Chancellor. Four of the senators, Maynard, Oliver, Allen, and Stebbins, delivered opinions for *reversal*, in which they held that an assignment under the bankrupt laws of England, to an assignee in bankruptcy, did not operate a legal transfer of the personal property of the bankrupt in this country, even as between the *assignees* and the *bankrupt*. Maynard and Stebbins, senators, held that if the property be on board a *British vessel* on the high seas, at the time of suing out the commission, and thus within the jurisdiction of England, it passes by the assignment; but if so, the fact must be distinctly averred, and will not be presumed. The order of the Chancellor was *reversed*, 17 to 4 for reversal.